**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Augusta, Georgia
By jpayton at 11:51 am, Mar 31, 2014

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | |
|---|---|
| IN RE: ) | Chapter 13 Case |
| ) | Number <u>13-11235</u> |
| LATASHA THOMPSON, ) | |
| ) | |
| Debtor ) | |
| _____) | |

## <u>OPINION AND ORDER</u>

Before the Court is a Motion for Relief from Stay filed by Titlemax of Georgia, Inc. ("Titlemax") seeking relief from stay as to two vehicles: a 2005 Chevy Impala ("Impala") and a 2005 Cadillac Escalade ("Escalade")(collectively, the "Vehicles"). This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(G) and the Court has jurisdiction under 28 U.S.C. §1334. For the following reasons, the motion for relief from stay is granted.

## <u>FINDINGS OF FACT</u>

On June 28, 2013, Latasha Thompson ("Debtor") entered a pawn transaction with Titlemax where she pledged her Impala as collateral for $1,715.19. Dckt. No. 25, Ex. A. The maturity date of the agreement was July 26, 2013. <u>Id.</u> On July 3, 2013, Debtor entered into a separate pawn transaction with Titlemax in the amount of $7,717.81 where Debtor pledged the Escalade as collateral. Dckt. No. 25, Ex. B. The maturity date for this pawn transaction was

August 2, 2013. <u>Id.</u>  Debtor has never made a payment under either agreement.  Both agreements provide:

> You hereby grant to us a security interest in your motor vehicle. In consideration of your payment of [$1,715.19 for Impala and $7,717.81 for Escalade](which is the cost to the seller or pledgor to redeem the merchandise in this period of the transaction), delivery to us of the motor vehicle's certificate of title, and agreement to pay all the fees, sums, interest, charges and amounts pursuant to O.C.G.A. §44-12-130 et seq. and disclosed herein, we agree to lend you [$1,518.00 for Impala and $7,146.78 for Escalade]. . . . [I]f you choose to redeem or repurchase the pledged goods, then you must pay us in cash the Total of Payments listed below on the specified maturity date of the pawn transaction, which is [07/28/2013 for Impala and 08/02/2013 for Escalade][hereinafter the "Specific Maturity Date"].
>
> .
> .
> .
>
> .
> The pledged goods may be redeemed for thirty days after the Specific Maturity Date or the extended maturity date . . . . You may redeem the motor vehicle within the grace period by the payment of any unpaid accrued fees and charges, the repayment of the principal, and the payment of an additional interest charge not to exceed 12.5 percent of the principal. . . . If the motor vehicle is not redeemed within the grace period it shall be automatically forfeited to us by operation of O.C.G.A. §44-14-403, and any of your ownership interest in the motor vehicle shall automatically be extinguished. After the grace period the pledged goods become the property of the pawn broker . . . . If you are in default, we have the right to take possession of the motor vehicle.

Dckt. No. 25, Exs. A and B.

On July 11, 2013, prior to the maturity date of either agreement, Debtor filed a chapter 13 bankruptcy petition. Debtor's chapter 13 plan proposes to pay Titlemax as "fully secured" with 5.25% interest with payments of $50.00/month for a minimum of 36 months on Titlemax's $7,717.81 Escalade claim and $9.00/month for a minimum of 36 months on Titlemax's $1,715.19 Impala claim. Dckt. No. 2. These payments will not pay Titlemax's claims in full over the life of the plan. Debtor's plan will pay a minimum dividend to her unsecured creditors. In her bankruptcy schedules, Debtor valued the Impala at $500.00 and the Escalade at $6,000.00. Dckt. No. 1, Sch. B. On September 16, 2013, without objection, Debtor's chapter 13 plan was called as confirmed subject to receipt of court costs.

Thereafter, Titlemax filed a late objection to confirmation asserting its rights as a pawn broker under the agreement. Dckt. Nos. 8 (Meeting Notice giving deadline) and 24 (Objection to Confirmation). Titlemax also filed the motion for relief from stay currently under consideration. Dckt. No. 25. Upon receipt of the court costs, the Order Confirming the Plan was entered on October 10, 2013. Dckt. No. 29. Neither, the Trustee, Debtor, nor Titlemax filed a proof of claim on the Vehicles. Titlemax filed two proofs of claim in Debtor's case; however, the

3

claims do not pertain to the Vehicles. No motion to allow late claims has been filed.

## CONCLUSIONS OF LAW

Titlemax requests relief from the automatic stay for "cause" pursuant to 11 U.S.C. §362(d). Once a bankruptcy petition is filed 11 U.S.C. §362(a) enjoins a creditor from attempting to possess or to exercise control over property of a bankruptcy estate. 11 U.S.C. §362. "Property of the estate" broadly includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). Deciding whether a debtor's interest in property constitutes "property of the estate" is a federal question, but the nature of a debtor's interest in property is determined under state law. Charles R. Hall Motors, Inc. v. Lewis (In re Lewis), 137 F.3d 1280, 1282 (11th Cir. 1998); Butner v. United States, 440 U.S. 48, 55 (1979).

Titlemax argues the Vehicles were no longer property of the bankruptcy estate as of September 9, 2013--60 days after the petition was filed--because Debtor failed to timely redeem the Vehicles within the 11 U.S.C. §108(b) redemption period. Conversely, Debtor argues the res judicata effect of confirmation binds Titlemax to the terms of the plan and precludes Titlemax's request for relief.

4

Pursuant to 11 U.S.C. §1327(a), "the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. §1327(a). "Once a proposed Chapter 13 plan is confirmed, the rights of creditors are fixed in accordance with the plan, and the debtor emerges with the contracts between himself and creditors having been rewritten as evidenced by his plan as confirmed." See In re Watson, 292 B.R. 441, 444 (Bankr. S.D. Ga. 2003).

> The doctrine of res judicata not only bars a court from relitigating issues that have been litigated in a cause but also bars a court from litigating issues that may have been litigated. Consequently, under res judicata, if a confirmation hearing has been held and a confirmation order entered, if no section 1325(a)(5) objection has been made, that order becomes binding as to any section 1325(a)(5) objection that could have been made. In this way, whether a debtor factually satisfies the requirements of section 1325(a)(5) or not, the requirements are satisfied for purposes of confirmation.

In re Westbrook, 246 B.R. 412, 416 (Bankr. N.D. Ala. 1999). Section 1327 states that the confirmed plan binds both the debtor and each creditor, "whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. §1327.

5

A creditor is defined as an "entity that has a claim against the debtor that *arose at the time of or before the order for relief* concerning the debtor." 11 U.S.C. §101(10)(A)(emphasis added). "'Claim against the debtor' includes 'claim against property of the debtor.'" 11 U.S.C. §102(2); Johnson v. Home State Bank, 501 U.S. 78, 83 (1991)("claim" and "right to payment" means "nothing more nor less than an enforceable obligation"). At the time the bankruptcy petition and plan were filed, Titlemax was a creditor. It had a claim that arose before the order for relief-- the petition date. See 11 U.S.C. §301(b)(commencement of a case constitutes an order for relief).

Under the language of 11 U.S.C. §1327, the viability of Titlemax's argument that the Vehicles were no longer property of the bankruptcy estate at confirmation is foreclosed by the res judicata effect of the confirmed plan as it is an issue that could have and should have been raised prior to confirmation. See In re Justice Oaks II, Ltd., 898 F.2d 1544, 1549 (11th Cir. 1990)("[W]hen all of the requirements of claim preclusion are satisfied, "the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit between the same parties . . . not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every [claim] which

6

might have been presented."); In re Jones, 2011 WL 748427, *3 (Bankr. N.D. Ill. Feb. 24, 2011)(pawnshop creditor's argument that pawned property was no longer property of the estate was barred by the res judicata effect of confirmed plan); In re Young, 281 B.R. 74 (Bankr. S.D. Ala. 2001)(finding pawn creditor bound by treatment in chapter 13 plan where the plan was confirmed without objection prior to expiration of the redemption period); In re Westbrook, 246 B.R. at 416 ("[T]he doctrine of res judicata not only bars a court from relitigating issues that have been litigated in a case but also bars a court from litigating issues that may have been litigated."); In re Mitchell, 281 B.R. 90, 94 (Bankr. S.D. Ala 2001)(res judicata bars litigation of all pre-confirmation issues); In re Lemma, 394 B.R. 315, 323 (Bankr. E.D.N.Y. 2008)("[T]he terms of the plan as confirmed fix the legal rights of the parties and the only cause for relief from the stay after confirmation is the debtor's material failure to adhere to the payment terms set forth in the plan.") citing In re Garrett, 185 B.R. 620, 623 (Bankr. N.D. Ala. 1995)(lift of stay order entered pre-confirmation was superseded by confirmation order where creditor with notice did nothing to preserve its rights); In re Moffitt, 2007 WL 1118287 (Bankr. N.D. Tex. 2007)(same).

Titlemax argues it is not bound by the terms of the plan

7

because the Vehicles were not property of the estate when the case was confirmed. See In re Chastagner, 498 B.R. 376 (Bankr. S.D. Ga. 2013)(discussing Georgia's laws governing pawn transactions and the automatic forfeiture of ownership when chapter 7 debtor fails to redeem); see also In re Olgesby, 2001 WL 34047880, at *2 (Bankr. S.D. Ga. Oct. 23, 2001)(discussing in a chapter 13 case Georgia law's automatic extinguishment of a pledgor's ownership rights in pawned property which eliminates the need for any action on the part of the lender to acquire title to the vehicle); In re Moore, 448 B.R. 93, 101 (Bankr. N.D. Ga. 2011).

Those cases are distinguishable. First, Chastagner involved a chapter 7 debtor seeking to avoid a non-possessory, non-purchase money lien under 11 U.S.C. §522(f), unlike the current case there was no binding plan and order of confirmation. Likewise, the case of Olgesby, did not involve the issue of the effect of confirmation where the pawnbroker failed to timely object to confirmation. In Moore, the pawnbroker had not been given notice of the confirmation hearing and did not have the opportunity to object prior to confirmation of the plan. None of these cases address the situation presented in this case. In this case, it is undisputed that Titlemax had notice of the plan and Debtor's proposed treatment. In fact, Titlemax filed proofs of claim on two

8

other vehicles.

In the current case, the respective maturity dates of the title pawn agreements were July 28, 2013 for the Impala and August 2, 2013 for the Escalade. The Vehicles were not redeemed on the maturity dates, but the agreements provided 30 day grace periods. O.C.G.A. §44-14-403(b)(1)("There shall be a grace period on all pawn transactions. On pawn transactions involving motor vehicles or motor vehicle certificates of title, the grace period shall be 30 calendar days."). In this case, the statutory 30 day grace period extended the contracts to dates after the petition date--August 27, 2013 for the Impala and September 2, 2013 for the Escalade. As a result, pursuant to 11 U.S.C. §108(b) the redemption period was extended to September 9, 2013 for both agreements--sixty days after the order for relief. 11 U.S.C. §108(b)(2). Furthermore, Debtor was in possession of both Vehicles at the time of filing. Therefore, at the time of the order for relief--the filing of the bankruptcy petition--the Vehicles were property of the bankruptcy estate. 11 U.S.C. §301(b)(commencement of a case constitutes an order for relief); In re Johnson, 165 B.R. 524, 528 (S.D. Ga. 1994)("[T]he date on which the bankruptcy petition is filed and the order for relief is entered is the watershed date of a bankruptcy proceeding.").

9

Debtor filed her chapter 13 bankruptcy plan during the redemption period proposing to pay Titlemax 5.25% interest with payments of $50.00/month for a minimum of 36 months on Titlemax's $7,717.81 Escalade claim and $9.00/month for a minimum of 36 months on Titlemax's $1,715.19 Impala claim. Titlemax was served with the plan and notice of the confirmation hearing. Dckt. Nos. 13 and 14. The notice informed Titlemax of the deadline to file objections to confirmation, noting that objections must be filed fifteen days after the conclusion of the meeting of creditors. Dckt. No. 8. Titlemax did not file a timely objection to confirmation. Federal Rule of Bankruptcy Procedure 3015(f) states:

> If no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues.

Fed. R. Bankr. P. 3015. Titlemax had adequate notice and failed to timely assert its rights. Therefore, its argument that the Vehicles are no longer property of the estate is barred. For these reasons, as a result of failing to timely assert its rights, Titlemax is now bound by the terms of Debtor's confirmed plan as it is subject to the automatic stay and may not seek a deficiency claim. See In re Bateman, 331 F.3d 821, 830 (11th Cir. 2003)(holding confirmed plan binding on creditor that may have had meritorious objection but did not object to confirmation or timely appeal confirmation); see also

10

United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 275 (2010)(upholding the binding effect of confirmation even though the failure to make an undue hardship determination before confirming the plan was legal error); In re Castleberry, 437 B.R. 705, 708 (Bankr. M.D. Ga. 2010)("[A]s a general rule, courts agree that a secured creditor's failure to object to a Chapter 13 plan may constitute its acceptance of the plan.").

However, the analysis does not end there as Titlemax has filed a motion for relief. A plan that does not provide for a creditor's in rem rights is subject to a motion for relief from stay by the affected creditor. See In re Thomas, 91 B.R. 117, 123 (N.D. Ala. 1988) aff'd 883 F.2d 991 (11th Cir. 1989)(creditor may file a motion for relief from stay where the creditor's lien passes through bankruptcy when the plan does not provide for the creditor and no proof of claim is filed); In re Hogan, 346 B.R. 715, 723 (Bankr. N.D. Tex. 2006); In re Lee, 182 B.R. 354, 357-58 (Bankr. S.D. Ga. 1995). "[A] Chapter 13 debtor cannot remain in possession of a secured creditor's collateral during the pendency of its plan where the debtor's plan makes no provision for the creditor's value of its security and where the sole reason for the disallowance of the creditor's secured claim was the creditor's failure to file a timely proof of claim." In re Lee, 182 B.R. at 357 citing In re Thomas,

11

91 B.R. at 123. A creditor that will not receive any payment under the plan is not "provided for" under the plan. See In re Thomas, 883 F.2d at 998 n. 13 (11th Cir. 1989)(a creditor is not "provided for by the plan" where debtors will make zero payments to creditor and do not intend to turnover collateral to creditor); In re Lee, 182 B.R. at 358 (the creditor "is not 'provided for' by the plan because it will receive no payment on the value of its interest in Debtors' vehicle"); In re Crenshaw, 2012 WL 5430948, at *3 (Bankr. S.D. Ala. Nov. 5, 2012)("[T]o be provided for in a plan, 'the plan must, at a minimum, clearly and accurately characterize the creditor's claim throughout the plan,' and must give specific notice to the creditor if the claim is not fully protected."); see also Hon. W. Homer Drake, Hon. Paul W. Bonapfel & Adam M. Goodman, Chapter 13 Practice and Procedure §11A:13 (2014)(noting "courts have concluded that a plan fails to provide for a lien if the creditor does not receive payments unless it files a proof of claim").

In this case, even with the res judicata effect of the plan, Titlemax's in rem rights were not extinguished at confirmation as the plan does not "provide for" the Vehicles. While the plan does provide to pay Titlemax, the payment amounts are wholly inadequate to provide for full payment of the confirmed value and the plan does not contain specific language voiding the lien of

12

Titlemax; furthermore, Titlemax will receive no distribution on the value of its interest in the Vehicles. See In re Thomas, 883 F.2d at 998 (holding "§1327 does not operate to extinguish a lien on property passing through bankruptcy for which no proof of claim is filed."); In re Crenshaw, 2012 WL 5430948, at *3 (confirmation was not res judicata as to creditor's lien where lien was not voided and did not preclude creditor's motion for relief from stay); In re Lee, 182 B.R. at 359 (same). Neither the Trustee, Debtor, nor Titlemax filed a proof of claim on the Vehicles and therefore, Titlemax is receiving no distribution for the Vehicles. See Fed. R. Bankr. P. 3004 (allowing a debtor or the trustee to file a proof of claim on behalf of a creditor); Fed. R. Bankr. P. 3021 (after confirmation, the trustee makes distributions to creditors with allowed claims, namely those for which a proof of claim has been filed); In re Bateman, 331 F.3d 821, 827 (11th Cir. 2003)("[T]he debtor also has an interest in ensuring that a proof of claim is filed, if the secured creditor neglects to do so, because the debtor is the party seeking the protection of the bankruptcy court and the ultimate benefit of the discharge of his or her liabilities."). As one court as stated:

> In summary, the secured creditors here may have lost the battle (by being foreclosed from receiving distributions under the confirmed Chapter 13 plans), but the Debtors and

13

> unsecured creditors may ultimately lose the war, since a secured creditor retains its lien, notwithstanding failure to file a proof of claim and omission from treatment under a confirmed plan. Presumably, any secured creditor in this situation will ultimately seek relief from the stay or adequate protection if not receiving payments from the debtor during the Chapter 13 plan/case. It is this prospect that was no doubt the reason that Fed. R. Bankr. P. 3004 was enacted—giving a debtor or trustee the right to file a proof of claim for a creditor who, for whatever reason, does not timely file a proof of claim pursuant to Fed. R. Bankr. P. 3002(c).

In re Hogan, 346 B.R. 715, 723 (Bankr. N.D. Tex. 2006); see also Hon. W. Homer Drake, Hon. Paul W. Bonapfel & Adam M. Goodman, Chapter 13 Practice and Procedure §11A:13 (2014)("Debtors who want a lien extinguished must, therefore, make sure that the plan provides for it and file a proof of claim on behalf of the creditor if it fails to do so.").

In this case, the Court must determine if Titlemax is entitled to relief from the automatic stay for "cause" under 11 U.S.C. §362(d)(1). The fact that Titlemax is not "provided for" under the plan does not result in the automatic granting of relief from the stay if there is a sufficient equity cushion to adequately protect Titlemax's lien. In re Lee, 182 B.R. at 359. Titlemax has the burden of proof on the issue of Debtor's equity in the Vehicles. 11 U.S.C. §362(g). Debtor's schedules are judicial admissions which

14

may be used in determining whether there is equity in the Vehicles. Fed. R. Evid. 201; In re Lee, 182 B.R. at 360. On Schedule D, Debtor values the Escalade at $6,000.00 with Titlemax's secured claim at $7,717.81 and values the Impala at $500.00 with Titlemax's secured claim at $1,715.19. Dckt. No. 1, Sch. D. Even given this most generous estimate of the value of the Vehicles, there is no equity in either of the Vehicles sufficient to absorb the Vehicles' depreciation over the life of Debtor's plan. The Debtor has not filed a motion to allow late claim and Debtor has never made any payments under either agreement, pre- or post-petition. Based upon the facts of this case, I find Titlemax's interest is not adequately protected and Titlemax is entitled to relief from the stay pursuant §362(d)(1) to repossess the Vehicles.

    For these reasons, Titlemax's motion for relief from stay is ORDERED GRANTED.

_/s/ Susan D. Barrett_
SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
this 31st day of March, 2014.

15